**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL ACTION** |
| : | |
| v.  : | **NO.  16-400** |
| : | |
| **RAHEEM SLONE** : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                    **June 30, 2020**

Following his admission of guilt resulting in his seventh felony conviction in young adult life, we sentenced Raheem Slone to the Congressionally mandated fifteen-year prison sentence on July 21, 2017.  He is now approaching the third anniversary of his sentence in custody at Federal Correctional Institution-Berlin.  After his warden denied his request, he now moves for compassionate release from custody arguing his mild asthma places him in heightened risk of contracting COVID-19 in the facility.  He offers no other reason or combination of reasons.  His mild asthma is not an extraordinary and compelling reason for compassionate release under the Sentencing Commission's policies addressing the types of grounds necessary for compassionate release.  We appreciate Mr. Slone's apprehension of contracting COVID-19 in the close quarters of a federal prison but his fear based on mild asthma is not enough.  Even if we could discern other reasons or combination of reasons, releasing Mr. Slone does not comport with sentencing policy and he poses a danger to the community if released now. We deny Mr. Slone's motion for compassionate release based on the reasons presented to us.

**I.       Facts**[1]

By mid-February 2016, state courts had convicted Raheem Slone for crimes including manufacturing, delivering and possessing controlled substances;[2] simple assault;[3] possessing a

firearm without a license;[4] retail theft;[5] possessions of an instrument of crime;[6] and resisting arrest.[7]  These courts convicted him of multiple crimes punishable by imprisonment for a term exceeding one year, precluding his right to possess a firearm under federal law.[8]

On February 16, 2016, an unknown woman approached Philadelphia police officers on patrol, gestured toward Mr. Slone, and told the officers Mr. Slone had a gun.[9]  The officers followed Mr. Slone as he walked away until he stopped, stooped over a storm sewer, and tossed an object into the sewer.[10]  Officers then approached Mr. Slone and saw an empty leather gun holster on his waistband.[11]  Officers checked the storm sewer where Mr. Slone dropped the object.  The officers recovered a loaded Rossi .38 caliber revolver which fit perfectly into the gun holster on Mr. Slone's waistband.[12]

On March 24, 2017, Raheem Slone pleaded guilty to being a felon in possession of the firearm.[13]  This conviction marked Mr. Slone's seventh criminal conviction.[14]  Consistent with Congress's sentencing mandate, we sentenced Mr. Slone to a term of 180 months followed by two years of supervised release and a $100 fine.[15]

Mr. Slone is currently incarcerated at the Federal Correctional Institution-Berlin.  According to his parole officer, he is a "dangerous recidivist and has shown a propensity for violence in addition to multiple illegal drug distributions."[16]  Mr. Slone is classified as an armed career criminal.[17]

Raheem Slone *pro* se seeks compassionate release under 18 U.S.C. § 3582 and § 4205(g).[18]  He argues he qualifies for compassionate release because continuing to serve a sentence under the Bureau of Prisons' COVID-19 lockdown model combined with his asthma is a "death sentence."[19]

### A.     Mr. Slone's health.

Mr. Slone is a thirty-six year old man with a history of asthma, allergies, gastrointestinal issues, and a 2004 gunshot wound to the thigh.[20]  On June 2, 2020, the nurse triaging Mr. Slone recorded no pulmonary symptoms: "Inmate had no apparent distress. He took his prescribed inhaler and says there was improvement within a few minutes of taking it."[21]  Mr. Slone reported to nursing staff in April 2020 he did not want to use his maintenance inhalers, stating "they make me fatigue[d] and taste[] horrible."[22]  The nurse reported no evidence he opened or used the inhalers.[23]  He reported shortness of breath from exercise as recently as March 2020,[24] but his rescue inhaler use appears to be sporadic,[25] and he is non-compliant with respect to his maintenance inhaler regimen.[26]  Mr. Slone fell ill with an upper respiratory infection in February 2020. His February 2020 chest x-ray showed no pulmonary complications,[27] but medical documents report he had uncontrolled upper respiratory symptoms secondary to allergies, such as a stuffy nose.[28]

Mr. Slone contends his asthma is a life-threatening illness.[29]  When asked about his current health status, Mr. Slone stated it was "good-great" but mentioned he uses an inhaler when needed.[30]

### B.     COVID-19 affecting persons held in prisons.

COVID-19 is a respiratory disease spreading through droplets produced when infectious persons talk, cough, or sneeze.[31]  The virus spreads "easily and sustainably through the community" in affected areas.[32]  COVID-19, which has now spread throughout the world, poses a serious global public health risk.  As of June 29, 2020, the Centers for Disease Control and Prevention reported a total of 2,545,250 cases of COVID-19 in the United States with 126,369 total deaths caused by the virus.[33]  According to the Center for Disease Control and Prevention,

people of any age with the following conditions might be at an increased risk for severe illness from COVID-19: asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; Thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.[34]

Correctional detention centers "present a unique challenge" for controlling the spread of COVID-19 through prison personnel and staff.[35] As of June 29, 2020, the Bureau of Prisons reported there are 1,442 federal inmates who have confirmed positive test results for COVID-19 nationwide.[36] There have been eighty-nine federal inmate deaths and one BOP staff member death attributed to COVID-19.[37] In the last month, the number of known infected incarcerated people doubled and prison deaths increased by seventy-three percent.[38] Mr. Slone alleges the 22-hour lockdown at the prison and the two hours of "social distancing" time out of the cell make the prison a "deathtrap hazard."[39] Mr. Slone alleges the Federal Correctional Institution-Berlin "is not equipped with the proper staff or equipment to provide any potential emergency service for his asthma conditional illness at any given time, if required."[40] The Bureau of Prisons does not provide statistics on the number of positive COVID-19 cases present at Federal Correctional Institution-Berlin.[41]

**II.     Analysis**

Mr. Slone *pro se* moves for compassionate release.[42] Congress allows us to reduce a sentence through compassionate release if we determine (1) the incarcerated movant meets

administrative exhaustion requirements, (2) "extraordinary and compelling reasons" warrant a reduction, (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission,"[43] and (4) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction.[44] The policy statement referenced by the statute is Section 1B1.13 of the United States Sentencing Guidelines.[45]

The issue is whether Mr. Slone has met these requirements. An incarcerated person moving to reduce his term of imprisonment must show he satisfied the procedural prerequisites for judicial review and compelling and extraordinary reasons exist to justify compassionate release.[46] Mr. Slone argues his current medical condition presents an "extraordinary and compelling" reason for his release. We disagree and deny Mr. Slone's motion for compassionate release.

### A. Mr. Slone exhausted his remedies with the Bureau of Prisons.

Since December 2018, incarcerated persons seeking compassionate release authorized by Congress have "two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the [Bureau of Prisons'] decision not to file a motion, or (2) file a motion after 'the lapse of 30 days from the receipt ... of such a request' by the Warden of the defendant's facility, 'whichever is earlier.'"[47] Mr. Slone submitted a request for compassionate release to the Warden of the Federal Correctional Institution-Berlin on March 23, 2020.[48] The Warden denied the petition because Mr. Slone did not provide evidence meeting the criteria to be considered for compassionate release. Mr. Slone exhausted his administrative remedies.[49]

### B. The danger COVID-19 presents to Mr. Slone, as an individual with asthma, does not constitute "extraordinary and compelling reasons" for his release.

Mr. Slone seeks compassionate release for an "extraordinary and compelling reason" as provided in the First Step Act, 18 U.S.C. § 3582(c)(1)(A).[50] Mr. Slone refers to his "life

5

threatening asthma condition" as grounds for compassionate release, which his medical conditions do not support.[51] He argues his health condition in light of the COVID-19 pandemic meets the defined grounds for compassionate release. We disagree.

Congress provides a mechanism for us to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission…"[52] Section 1B1.13 of the United States Sentencing Guidelines is the only applicable policy statement.[53] The policy statement provides to find "extraordinary and compelling reasons," the defendant must fit into one of the following four categories:

>  (A) Medical Condition of the Defendant.-
> 
>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> 
>   (ii) The defendant is—
> 
>   (I)   suffering from a serious physical or medical condition,
>   (II)  suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> 
>  (B) Age of the defendant.—
> 
>  (C) Family Circumstances.—
> 
>  (D) Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[54]

The Center for Disease Control and Prevention has recognized "[m]oderate-to-severe asthma may put people at higher risk for severe illness from COVID-19."[55] Recent evidence shows those with asthma may be more likely to be admitted to the hospital with COVID-19.[56] This overrepresentation may occur because COVID-19, in some cases, triggers "severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2)," which worsens asthma exacerbations.[57] There are four generally accepted categories of asthma severity: (1) mild intermittent; (2) mild persistent; (3) moderate; and (4) severe.[58] The U.S. Department of Health and Human Services provides that moderate asthma occurs if, without treatment, any of the following are true: symptoms occur daily; inhaled short-acting asthma medication is used every day; symptoms interfere with daily activities; nighttime symptoms occur more than 1 time a week, but do not happen every night; or lung function tests are abnormal (more than sixty percent to less than eighty percent of the expected value).[59]

As Chief Judge Sánchez found in *United States v. Towel*, an incarcerated person arguing extraordinary and compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release.[60] Mr. Towel testified doctors diagnosed him with asthma as a child, he used a rescue inhaler when he exercises, and was otherwise in good health.[61] The Chief Judge concluded these symptoms alone did not rise to the level of severity required to reach extraordinary and compelling reasons.[62] Judge Andrews in the District of Delaware found a "generally healthy young individual with mild asthma" did not have health issues sufficient to demonstrate circumstances qualifying him for compassionate release.[63] The district court for the Southern District of New York also denied compassionate release to a twenty-six year old man with "reportedly well controlled" asthma, finding "[a]ll he has done is to note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide. That is not enough."[64]

Similar to the defendant's lack of symptoms in *Towel*, Mr. Slone does not have daily asthma symptoms, use his inhaler daily, or have abnormal lung function. In February 2020, his chest x-ray showed no pulmonary complications,[65] and his record shows uncontrolled upper respiratory symptoms secondary to allergies.[66] Mr. Slone reports his health is "good-great."[67] The Centers for Disease Control and Prevention has recognized moderate to severe asthma as a risk factor for more severe illness from COVID-19, but Mr. Slone's asthma is mild. Mild persistent asthma alone does not amount to an extraordinary and compelling reason warranting release.

We are mindful other judges have ordered compassionate release due to asthma when coupled with old age and other health issues. The district court for the Southern District of New York found a sixty-two year old man "treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma" to be at a higher risk of "developing serious complications should he be exposed to COVID-19 while at the [prison] or a halfway house and would substantially diminish his ability to provide self-care within those environments."[68] The court found the combination of asthma, old age, and other physical ailments constituted extraordinary and compelling circumstances warranting compassionate release.[69]

Mr. Slone does not argue a combination of factors as extraordinary and compelling reasons warranting release. Mr. Slone's medical records demonstrate mild asthma. He offers no other reason except his fear of contracting COVID-19 in the facility. Our Court of Appeals confirmed fearing COVID-19 is not grounds for release when it reviewed these issues at the outset of our study of COVID-19 compassionate release motions.[70] Mr. Slone's medical records show mild and occasional asthma symptoms which fall within, at most, the mild persistent

asthma category.[71] We do not contest Mr. Slone's asthma, but his respiratory illness does not rise to the level of severity necessary for to place him in the high risk category warranting potential compassionate release.

Mr. Slone is thirty-six years old and has no other medical risk factors. We understand Mr. Slone's concern regarding COVID-19, but the fear of contracting the virus does not constitute extraordinary and compelling reasons for compassionate release. Mr. Slone is not at a substantially greater risk for complications from COVID-19 than a completely healthy person in prison. Taking into account Mr. Slone's age and current health status, he has not demonstrated "extraordinary and compelling circumstances" to make him eligible for compassionate release.

**C.  Even if Mr. Slone shows an extraordinary and compelling reason, his release would not be consistent with applicable policy statements issued by the Sentencing Commission or with the sentencing factors under section 3553(a).**

As Mr. Slone failed to present evidence of "extraordinary and compelling" circumstances to warrant his release, we do not need to proceed into further analysis of the section 3553(a) factors nor do we need to evaluate whether his release would create "a danger to the safety of any other person or to the community."[72]

If Mr. Slone's medical condition constituted a serious ailment or he if could demonstrate a combination of factors, we may then analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires us to consider the "factors set forth in section 3553(a) to the extent they are applicable" before we may reduce a sentence. These factors require us to determine whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct."[73] The statute also instructs us to consider the Sentencing

Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[74]

Courts have concluded even where an individual has medical conditions which make him vulnerable to COVID-19, his danger to the community may ultimately outweigh any health concerns and the balance of factors would weigh against release.[75] For example, the district court for the District of Connecticut held an incarcerated person with an extensive criminal history resulting in periods of incarceration over the years with little to no deterrent effect continued to pose a danger to the community and denied his motion for release.[76] An individual will not be released through the compassionate release mechanism if their criminal activity demonstrates they may be a danger the community.

Mr. Slone does not address reasons for release other than his medical condition. Nor could he. The United States Probation Office calculated Mr. Slone's criminal history as a category VI, the highest level of criminal category.[77] The Probation Officer states in Mr. Slone's presentence investigation report: "The defendant has been sentenced to significant periods of imprisonment, intermediate punishment, community supervision, and drug/alcohol therapy to no avail… The defendant's conduct in this matter is disturbing, violent, and worthy of a lengthy period of incarceration. At no time in the defendant's adult life has he made an effort to conduct himself in a law-abiding manner. His contempt for the rules of society and his inability to conform his criminal conduct is noteworthy."[78]

Even if we were to reach the danger to the community analysis and the section 3553(a) factors, we could not release Mr. Slone. Mr. Slone's release would be inappropriate at this early stage of his sentence because his criminal history suggests he may pose a danger to the

community. Mr. Slone has multiple criminal convictions and time incarcerated has provided little to no deterrent effect. In light of Mr. Slone's history of criminal conduct, apparent lack of respect for the law, and early stage of a sentence necessary to address his crime, Mr. Slone's compassionate release motion fails.

**III.     Conclusion**

Though Mr. Slone is understandably concerned with contracting COVID-19 while incarcerated, this does not equate to extraordinary and compelling reasons warranting his release. Neither does his mild asthma. We deny his *pro se* request for compassionate release without prejudice. Mr. Slone may move again if he is able to show an extraordinary and compelling reason consistent with this Memorandum.

---

[1] We review the record in the ECF document system and Mr. Slone's Presentence Investigation Report ("PSR").

[2] PSR at ¶ 24.  Controlled substances included heroine and crack cocaine. *Id*.

[3] *Id.* at ¶ 25. Mr. Slone physically assaulted his ex-girlfriend when they got into an argument. The defendant choked her and hit her in the eye, mouth, and the arm. *Id*.

[4] *Id.* at ¶ 26.

[5] *Id.* at ¶ 31.

[6] *Id.* at ¶ 37.

[7] *Id.* at ¶ 38.

[8] 18 U.S.C. §922(g)(l), (g)(9).

[9] PSR at ¶ 6.

[10] *Id*. at ¶ 7.

[11] *Id.*

[12] *Id.*

[13] ECF Doc. No. 56 at 1.

[14] PSR at p. 17.

[15] 18 U.S.C. §924(e); ECF Doc. No. 56 at 5-7.

[16] PSR at ¶ 17.

[17] *Id.* at ¶ 33.

[18] ECF Doc. No. 81 at 1. Congress repealed the compassionate release provision under 18 U.S.C. § 4205(g) in November 1987 and instructs us to apply 18 U.S.C. § 3582 for incarcerated persons whose offenses occurred after that date.

[19] ECF Doc. No. 81 at 3.

[20] ECF. Doc. No. 84-2 at 9.  Mr. Slone's medical records are sealed along with the letter from the United States entered on June 24, 2020.

[21] *Id*. at 1 (recording a June 2, 2020 nursing assessment finding "Pulmonary Observation/Inspection . . . Within Normal Limits").

[22] *Id*. at 5.

[23] *Id*. ("Inmate had two unopened Mometasone Furoate Inhal 220 MCG/Inh (60 doses) found in his cell").

[24] *Id*. at 9. In the same visit, a triaging nurse reported Mr. Slone's lung sounds were clear to auscultation. *Id*.

[25] ECF Doc. No. 84-1 at 6.

[26] ECF Doc. No. 84-2 at 6.

[27] ECF Doc. No. 84-1 at 53.

[28] *Id*. at 7 ("[A]sthma exacerbation probable 2 to sinus infection"); *Id.* at 12 ("Inmate does still have sinus congestion. He admits that last evening he took an 'allergy tab' and was able to get sleep"); *Id.* at 14 ("Inmates [sic] lungs are clear throughout bilaterally"); *Id.* at 16 ("On exam inmate has a runny nose, clear fluid w/ nasal congestion. His lung sounds are clear and no wheezing was heard").

[29] ECF Doc. No. 81 at 1.

---

[30] PSR at ¶ 50 ("[T]he defendant's physical condition does not appear to present an issue for sentencing, institutional classification, or community supervision").

[31] Centers for Disease Control and Prevention, *Coronavirus 2019 Basics*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019ncov%2Fprepare%2Ffaq.html#Spread (last visited June 30, 2020).

[32] *Id.*

[33] Centers for Disease Control and Prevention, *Cases of Coronavirus Disease (COVID-19) in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 30, 2020).

[34] Centers for Disease Control and Prevention, *People Who Need Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited June 26, 2020).

[35] Centers for Disease Control and Prevention, *Guidance for Correctional Detention*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited June 30, 2020).

[36] Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited June 30, 2020).

[37] *Id.*

[38] Centers for Disease Control and Prevention, *Guidance for Correctional Detention*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited June 30, 2020).

[39] ECF. Doc. No. 81 at 2.  *See* Barbara Tetreault, *Berlin Prisons Taking Steps Prevent Outbreak*, The Conway Daily Sun (March 23, 2020), https://www.conwaydailysun.com/news/local/berlin-prisons-taking-steps-to-prevent-covid-19-outbreak/article_ddab5f2a-6d20-11ea-a113-571b013fc33f.html (explaining a former staffer at the federal prison tested positive for COVID-19 had not contracted the disease from the prison and individuals who had come in contact with him were being monitored closely).

[40] ECF Doc. No. 81 at 2.

[41] Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited, June 30, 2020).

[42] ECF Doc. No. 81 at 1. We referred Mr. Slone's motion to the Federal Defenders' Office for review and possible appointment on the first business day after docketing the motion. ECF Doc. No. 82. The Federal Defenders reviewed the motion and promptly declined representation, stating it would reevaluate if Mr. Slone's circumstances changed. *See U.S. v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("[T]he constitutional right to counsel extends only through the defendant's first appeal. After that, the decision whether to appoint counsel rests in the discretion of the district court.").

[43] We recognize some attorneys for the United States disagree as to whether we may independently determine extraordinary and compelling reasons under Note 1(D). Most courts, including Chief Judge Sánchez, find "[a]lthough Application Note 1(D) includes language requiring a determination of extraordinary and compelling reasons by the BOP director, this is no longer required as the First Step Act removed this language." *U.S. v. Towel*, No. 17-519-6, 2020 WL 2992528, at *3 n. 1 (E.D. Pa. June 4, 2020). Reasonable advocates can also dispute whether there are applicable policy statements after the First Step Act since the Sentencing Commission has been unable to update its policy statements since then because it lacks a quorum. *U.S. v. Harding*, No. 3-14-226, 2020 WL 2988955, at *1 (D. Conn. June 4, 2020) (explaining "several district courts that have addressed this issue and found that the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete, and thus that the statutory language requiring that the sentence reduction be "consistent with applicably policy statements by the Sentencing Commission" is no longer operative); *See, e.g., U.S. v. Rodriguez*, No. 3-271-1, 2020 WL 1627331, at *4 (E.D. Pa. April 1, 2020). We need not reach this issue as Mr. Slone fails to plead an extraordinary and compelling reason under any part of the Sentencing Commission's Note 1, fails to demonstrate he should be released under the 3553(a) factors, and fails to prove his release would not pose a danger to the community.

[44] 18 U.S.C. § 3582(c)(1)(A)(i).

[45] U.S.S.G. § 1B1.13.

[46] 18 U.S.C. § 3582(c)(1)(A)(i).

[47] *U.S. v. Rodriguez*, No. 03-271-1, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) (citing 18 U.S.C. § 3852(c)(1)(A)).

[48] ECF Doc. No. 81 at 5.

[49] *See* 18 U.S.C. § 3582(c)(1)(A) (courts can consider motions for compassionate release after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility").

[50] ECF Doc. No. 81 at 1.

[51] *Id*. at 1. Mr. Slone argues "FCI-Berlin's very location poses a threat to him and life safety." *Id*.

---

[52] 18 U.S.C. § 3582(c)(1)(A)(i).

[53] U.S.S.G. § 1B1.13.

[54] *Id.* at Note 1(A)-(D).

[55] Centers for Disease Control and Prevention, *People who Need to Take Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 17, 2020).

[56] Elissa Abrams, Geert 't Jong & Connie Yang, Paediatric asthma and COVID-19, OTTAWA: CANADIAN PAEDIATRIC SOCIETY (Apr. 1, 2020), www.cps.ca/en/documents/position/paediatric-asthma-and-covid-19 (last visited June 18, 2020); Parag Goyal et al., Clinical characteristics of COVID-19 in New York City, 382 NEW ENG. J. MED. 2372 (Apr. 20, 2020), https://www.nejm.org/doi/full/10.1056/NEJMc2010419; *See also U.S. v. Hernandez*, No. 18-834-04, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (explaining "COVID-19 presents a heightened risk for incarcerated defendants . . . with respiratory ailments such as asthma. The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease.").

[57] Elissa Abrams, Geert 't Jong & Connie Yang, *Asthma and COVID-19*, CANADIAN MED. ASS'N J. (May 19, 2020), https://doi.org/10.1503/cmaj.200617.

[58] *Id.* Mild intermittent asthma is characterized by two or less asthma events a week with minimal interference in daily functioning.

[59] *Towel*, 2020 WL 2992528, at * 4 (citing Asthma Care Quick Reference Guide, U.S. Dep't of Health and Human Servs. (Sept. 2012), https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf).

[60] *Id.*; *see also Harding*, No. 14-226, 2020 WL 2988955, at *1 (D. Conn. June 4, 2020) (holding a 34-year-old with mild asthma did not qualify for compassionate release).

[61] *Towel,* 2020 WL 2992528, at *2.

[62] *Id.* at *4. Mr. Towel does not require daily asthma medication, his symptoms do not interfere with daily activities, and his lung function appears normal. *Id.*

[63] *U.S. v. Evans*, No. 13-67, 2020 WL 2543142, at *3 (D. Del. May 19, 2020).

[64] *U.S. v. Rodriguez*, No. 16-167, 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020).

[65] ECF Doc. No. 84-1 at 53.

[66] *Id.* at 7. See note 8.

15

[67] PSR at ¶ 50.

[68] *U.S. v. Smith*, No. 12-133, 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020); *see also U.S. v. McCarthy*, No. 17-0230, 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (holding a 65 year old man suffering from COPD, asthma, and other lung-related ailments, combined with the COVID-19 pandemic, constituted extraordinary and compelling reasons warranting compassionate release).

[69] 18 U.S.C. § 3582(c)(1)(A)(i).

[70] *U.S. v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

[71] ECF Doc. No. 84-1 at 53.

[72] 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.

[73] *U.S. v. Nesbitt*, No. 09-181, 2020 WL 3412577, at *3 (E.D. Pa. June 22, 2020).

[74] U.S.S.G. § 1B1.13.

[75] *U.S. v. Belle*, No. 18-117-1, 2020 WL 2129412, at *5 (D. Conn. May 5, 2020).

[76] *U.S. v. Morales*, No. 19-121, 2020 WL 2097630, at *3 (D. Conn. May 1, 2020); *see also U.S. v. Moore,* No. 16-171, 2020 WL 2572529, at *2 (D. Or. May 21, 2020) (granting a prisoner's petition because he had less than four weeks remaining on his sentence, he was suffering from a serious medical condition which diminished his ability to provide selfcare, and he had participated in educational and rehabilitation programs).

[77] PSR at ¶ 33.

[78] PSR at 17-18.